Mr. Canada v. United States Good morning, Your Honors. When we argued this case at one point in the district court, Judge Schoehler, who was fairly new at the time, said when this case was assigned to her, she thought this is going to be a doozy, Canada v. the United States, and then she realized what it was. For the record, John Lewis appearing on behalf of the appellant, William R. Canada, Jr., who was appealed from the dismissal by the trial court, the district court, of his Bivens claims and other claims against the Internal Revenue Service and three individual Internal Revenue Service officers and agents under his Bivens claims for violation of his constitutional rights in attempting to assess exorbitant tax penalties against him without providing him any way or any remedy to contest those taxes at a court of law. As a result, Mr. Canada suffered substantial damages. He was forced into a Chapter 11 bankruptcy case. And had to expend substantial legal fees. In that case, his credit has been ruined. He has now sought to sought recompense and sought redress in the district court for those constitutional violations, and his claims were denied. In this argument, I will address three issues. First, whether following the Supreme Court's decision in Ziegler, this Court's decision in Hernandez, does Mr. Canada possess a viable Bivens claims, and should he be allowed to present those claims in the district court, present his evidence to establish why his constitutional rights were violated, what his damages were, and why the individual defendant should be liable and responsible to him. We will then address the district court's decision on qualified immunity, whether in the context of this case, there was a clearly established constitutional right that was violated, and whether the individual officers involved knew that that right was violated, and they were in fact violating it, when they set the penalty at such a level that they knew he could not pay it, could not get to a court of law. And finally, I will try to address, if time allows, the issue of whether Mr. Canada has timely sought the recovery of attorney's fees under the Internal Revenue Code, because the government's position was not substantially justified, and because his bankruptcy case allowed him, or granted an extension of time for him to actually file and pursue those claims. Okay, so let me ask you this. You mentioned Hernandez, which we all know CERT was granted and is pending before the U.S. Supreme Court. Do you think that we should await the outcome of that decision before deciding your case? Your honor, the case was argued, I think, within the last month maybe. With his companion case, Rodriguez. You know, I had dinner with Mr. Canada last night, and we frankly, when we ask ourselves that very question as to what this court would do, I have to confess, that decision, when it is handed down, it may be June, will provide guidance. And certainly from Mr. Canada's perspective, there is nothing pressing other than his desire to proceed in this case one way or another that would caution against waiting for that further guidance. I'm not going to suggest trying to tell this court what to do at all. You've asked me the question, should we wait? Our usual rule is we follow our existing precedent unless and until the Supreme Court reverses it. My question was more, do you think there's something core in Hernandez, other than it just generally is dealing with Bivens, is there something in there that you really think will or would impact the determination of whether Mr. Canada has a Bivens action in this case? I'm sorry, I may have misunderstood your earlier question. Actually, no. I think the Hernandez case is so distinguished, distinguishable. The facts are so different. To use the Supreme Court's language, the special factors are considerably different. You know, the transnational aspects of that case, the border protection, the national security, the officers involved, the fact that the federal government conducted investigation into that officer's action and so forth. I think that case is so different that I don't really think you need to, but I do think we would get guidance in some of the, perhaps some of the issues that are here, such as burden of proof. Okay. Let me ask you this, because this seems to kind of go to the core. It seems like the main problem that Mr. Canada faced is the reality that he had very limited means to attack this penalty, and that is not caused by these individual agents. That was caused by Congress. So how is it that there should be a Bivens action against IRS agents for something Congress elected to do? The reason that what the IRS agents did in this case rises to a constitutional violation is that the IRS agents intentionally ignored the plain language of federal statutes. They intentionally ignored how you calculate tax penalties in order to get to a penalty that was so high that neither Mr. Canada nor most United States citizens could ever go to court to challenge the penalty. And they knew that if you set the penalty high enough and he's not able to contest it judicially, he would have no choice but to resolve the penalty by paying them some money, even though it may be totally invalid, which in this case two federal courts said it was, or he would have to suffer the risk of year after year of losing his property. It's the intention and the knowing actions by the IRS agents of ignoring the statutes, ignoring how you apply these penalties, whether they actually in fact apply, calculating those penalties and going forth with it in disregard of his rights. It's just not— Doesn't your argument kind of defeat itself, though? Because what you're saying is that they set these penalties at such a high limit that he couldn't get judicial relief, but you got judicial relief. The only way we were able to get there, Your Honor, was by filing a Chapter 11 bankruptcy case and getting a bankruptcy court, which was the only court that could even review what the IRS had done, to examine the facts, examine the statute, issue a 37-page opinion, which was later affirmed by Judge Boyle in the district court. I would suggest that requiring someone to seek Chapter 11 bankruptcy in order to get your day in court is not the type of post- or pre-assessment judicial hearings that Congress envisioned or that the Supreme Court envisioned for due process or that our Constitution says is due process. I mean, granted, they could have taken his property under a jeopardy assessment. So long as he had a right thereafter to get to a courtroom and prove to a judicial officer that the IRS's actions were improper, he could reclaim his property. You don't have to have a hearing before they assess it, but he ought to have a hearing after they assess it before they start taking his property. Right, but that is not up to the agent. I mean, that is the— Again, you're somewhat just challenging the statute, which I understand. I think it's a fairly, you know, unpleasant statute to the average taxpayer. But that said, that isn't the agent's call. They can't change the statute. That's something you have to go to Congress and try to get changed or challenge the statute directly, successfully or unsuccessfully, saying it, you know, fails to give due process or whatever the challenge is. I guess I don't understand why an agent enforcing, in essence, a statute is something that can justify a Bivens claim, even if you don't like the way they did it. The statutes, the internal revenue statutes, have—there's a flaw. You know, this court in Rutherford, many, many years ago, in dicta recognized that if we have IRS agents who, in total disregard of their obligations, total disregard of their tax laws, go out and harass and seek, you know, oppressive collection, they may be subject to Bivens. Congress fixed that a few years later with a statutory amendment. Unfortunately, that statutory amendment did not pick up penalties as opposed to taxes. So there's a glitch in the tax laws. We're not here necessarily complaining about that glitch. We're here complaining and believe that there's a remedy under Bivens because these agents, and especially Mr. Halpern, who was head of the tax shelter for parts of the IRS in Washington, took advantage of this glitch to intentionally ignore how you calculate these penalties, ignore whether this was, in fact, a tax shelter that Mr. Canada was involved with, and basically go out and targeted Mr. Canada as someone who was involved in tax shelter business 15 years earlier and targeted him as someone to assess this immense penalty against. One of the complaints, one of the allegations in the complaint is that they miscalculated this penalty. If they had applied the correct penalty calculations... You know, if you're an IRS agent, I'm guessing you're not going to get it right every day, every person. And in fact, I mean, there's books and books and books of IRS rules and regs and statutes and whatever. It's a very complex area of the law, and that's why people go and get LLMs and specializing in it. And given that, I could see an IRS agent getting it wrong and being told they got it wrong. And if we create a Bivens claim for that, then that's sort of like suing judges who got reversed on appeal. That'd be a little worrisome. Your Honor, the way you calculate it is set forth by statute. There's not a lot of discretion. It's not like judges having to use their discretionary functions to cite facts. Again, I view having... And again, this is something that Mr. Canada should be able to flesh out at trial or in a court proceeding. Do you understand that... Because we're appellate judges. We don't have a whole lot of discretion. We still don't really want to be sued because we were reversed by the Supreme Court, okay, or something of that nature. And the problem is it quells your ability to do your job. So that's the rub, in part, in analyzing this Bivens. It's not the only one, but it is one, and I'm just trying to understand that here. That's why I don't believe there's any special factors here that would militate against providing a Bivens remedy. And that's because the IRS, since the late 1980s, have been operating under a statute that says if I'm collecting taxes, I have to abide by the Constitution of the United States. And if I don't abide by the Constitution of the United States, this statute says Mr. Canada, or whoever the taxpayer is, can bring claims. And there's no evidence in this record that that statute, done on the books since the late 1980s, has quelled or chilled or had any negative impact on the IRS. Now, what's the difference between having to operate under that statute, 26 U.S.C., I believe it's 7734, and having, for collecting taxes, and the collection procedure, what's the difference between that and just imposing a penalty? Do you want to say anything quickly about the attorney's fees? See, I'm way down. Your Honor, we have a right under 77, I believe it's 70, or 7430, to get our attorney's fees that are reasonable if the IRS's position is not substantially justified. We don't believe they are. The IRS has said, oops, you're too late because you need to do that in 30 days after there's been a judgment that says you would. You're the prevailing party. The issue is whether, was Mr. Canada's claim, for those attorney's fees, which are part of his claim against the IRS for improperly assessing the penalties, were those rights extended by reason of his bankruptcy case? We suggest they are because 108 specifically provides for the extension. That's the bankruptcy code. And to the extent that you're arguing that that's a jurisdictional issue because of sovereign immunity, 106 of the bankruptcy code says that's waived anyway because of the amount of time. Okay. You've reserved time for rebuttal. I did. May it please the Court, Jeff Klimas for the Individual Defendants and the United States. The District Court correctly dismissed the Bivens claims against the Individual Defendants for two reasons, each of which provides an inappropriate creative Bivens remedy for claims arising from the improper assessment of taxes or tax penalties where Congress has created a comprehensive remedial scheme addressing this issue, where Congress has repeatedly rejected the creation of a damages remedy, and were allowing such suits would unduly disrupt the government's ability to enforce the tax code. Second, and in the alternative, the Individual Defendants are entitled to qualified immunity where no court had at the time considered the Bivens claim. And the Individual Defendants act— You know, we found qualified immunity in Hernandez, and that was not satisfactory to the Supreme Court. They sent it back to us to address the Bivens. So I guess I'm wondering, you know, ordinarily it is acceptable to say, well, even if there was a cause of action, they have qualified immunity here, but I just, I don't know what to make of the Hernandez situation. Do you want to address that? I'm not sure I understand the question, Your Honor, in terms of whether this court can actually proceed in the alternative without reaching the Bivens. Yeah, I mean, because that's what we did in Hernandez. I guess that I'm a little bit puzzled too, Your Honor. I think that historically courts have treated these as alternative bases for affirmance, and I believe that there was even a concurrence in the Ambon-Hernandez decision on remand suggesting that it would have been appropriate to affirm just on qualified immunity grounds. We think that they are alternatives, that they don't necessarily relate to one another, that you don't have to adjudicate one or the other first, but it is possible to read the Supreme Court's decision in Hernandez as requiring the court to first address the separation of powers issue in terms of whether to extend Bivens, and then to proceed to the qualified immunity issue, although we would submit that it doesn't really make a difference because they are independent. I know you think you win either way, but we have to write an opinion. Understood, Your Honor. I'm just curious on that. Well, so then on the Bivens question, this is a very punitive statute with very limited remedies if you don't have billions of dollars in your pocket, and so how are you supposed to deal with that as an individual if you have an IRS agent? Let's say it was true and just trying to squeeze every last dollar out of you on a completely false penalty. Let's just assume all of that is true. I know you would dispute that, but let's assume that. What is your remedy as the taxpayer? Sure, so, and let me address this in a couple parts. So you're right that as part of the way that this penalty is enacted by Congress, there are limited remedies available, and that's partially because of the way that, because the fact that Congress has carved out tax court reviews as a prepayment form, it's also linked the amount of the penalty not to the amount that the promoter earned from promoting the shelter or to the promoter's net worth, but linking it rather to the aggregate amount invested in the tax shelter, which can be a very substantial number as it was in this case. But there are still remedies that are available even putting aside the possibility of a refund suit if the individual can't full pay, that the individual still has, at a minimum, they can go to IRS appeals, which is a form by the tax court and four circuit courts, and it's independent as a matter of law, that an individual could also do what Mr. Canada did, which was proceed in bankruptcy either under Section 502, an objection to claim, or 505, a proceeding to determine liability under the Internal Revenue Code, or a taxpayer could do what many taxpayers ultimately do, which is to sit back and wait for the government to bring an affirmative enforcement suit, which is a property. So all of those are available remedies. Now, there's a, the hypothetical you suggested is that maybe there wasn't even some arguable basis for the IRS coming, you know, the IRS jumps out of the bushes and says, Your Honor, we think you were involved in promoting a son of boss tax shelter 20 years ago. That's not what would happen with Mr. Canada, but in that situation, there are other safeguards as well for taxpayers, one of which is suggested in Mr. Canada's opening brief, which is that if typically you can't get an injunction to restrain the assessment or collection of taxes or tax penalties, however, there is a limited exception discussed in Shapiro where a taxpayer can prove that they are certain to prevail on the merits and equity jurisdiction otherwise exists. It's that first prong that taxpayers typically have difficulty satisfying. But what Shapiro said is that when the information regarding the underlying factual basis then a taxpayer can bring an injunction suit and propound discovery, which the government must respond to, setting forth the factual predicate for that assessment before they can seek dismissal. And if there was no basis whatsoever for the IRS's assessment, then presumably a taxpayer could win under that standard. And then we would additionally note that these aren't the only safeguards that are available to curtail any agency employee misconduct. As the Second Circuit discussed in Hudson Valley Black Press, there's also the availability of having the independent inspector general conduct an investigation of IRS employee misconduct. If an IRS employee is found to have committed misconduct for the purpose of retaliation or harassment, that is by statute grounds for termination, and furthermore, in the cases, in a case where the misconduct rises to a certain level such as fraud, that employee can be referred to the Justice Department for criminal prosecution. So there are additional safeguards that are in place to protect from that scenario as well. Any of the remedies that you just listed include attorney's fees? I don't think that I listed attorney's fees, but attorney's fees are available. Which one? If you've tried to bring an exception to the Tax Injunction Act under Shapiro, could you get attorney's fees if you got the injunction? Yes, that would be a civil action against the government in connection with the termination or collection of tax, and it would qualify for attorney's fees. Just as the proceedings that Mr. Canada, the contested matter that Mr. Canada initiated in bankruptcy court is one for which he could recover attorney's fees. Just as a defensive lawsuit, defending against a lawsuit brought by the government to enforce tax sentence or reduce assessments to judgment is one in which he could recover attorney's fees. So attorney's fees are compensable in those scenarios. And while we're on the subject of attorney's fees, I guess I'm wondering this notion that his right to attorney's fees didn't come in until post-petition, even if his claim arose pre-petition, makes me wonder, in a standard case, say a breach of contract case, you breached the contract, I therefore wasn't able to keep my business going, so I went into bankruptcy, now I'm suing you for that. That's clearly a pre-petition event, the breach of contract. And it comes with it a right to attorney's fees. I'm thinking in Texas, maybe that's not obvious. I'm thinking under Texas law, you have a right to attorney's fees. That would be part of your lawsuit. You would raise it as part of that lawsuit. You're accruing those attorney's fees from beginning to end, and then you recover all of them. Obviously you have to be a prevailing party, but that's sort of true on the breach of contract. To get damages for breach of contract, you also have to prevail. So all of that is resting on proving the breach of contract with damages and attorney's fees. Why then isn't that all pre-petition? Your Honor, we would submit that what's unique about this situation is that the limitations period that Mr. Canada seeks to extend commenced post-petition. So that's the first distinction we would make. We're not aware of any case in which a court has applied 108A to extend a limitations period that had not commenced as of the petition date, which we think is significant. But the other component of this is that the hypothetical that you raised involves someone who could have, on a pre-petition basis, brought suit to challenge the breach of contract issue to raise that issue judicially because all the elements were present. Here, Mr. Canada, prior to the IRS assessing this penalty, could not have challenged that penalty in court absent him filing the bankruptcy. So he couldn't have even brought the underlying claim prior to filing the petition in this case. He couldn't have brought the claim contesting the taxes, nor could he have brought the claim for the attorney's fees that he had not yet incurred. So we think that either way you analyze this, you end up with the same result, which is that this is a post-petition claim, a claim that arose after the petition date. And he wasn't eligible for attorney's fees until he was affirmed by the district court and not appealed? He may have been eligible to seek an interim award of attorney's fees for the bankruptcy court's decision. Typically, taxpayers wait until they have run because that's when the 30-day clock runs, and it makes sense to do it all in one swoop rather than piecemeal and having to wait and see if you're reversed. So he probably could have filed a motion for attorney's fees after he prevailed in the bankruptcy court, but there's certainly nothing wrong or unusual about him waiting. It is a little bit unusual that he went into district court and filed a freestanding suit seeking those attorney's fees rather than simply going back to his previous position, and which would have probably avoided the sovereign immunity issue that we're running into here, that he could have availed himself of the waiver of sovereign immunity under 106A, which incorporates contested matters under 502 and 505 and specifically discusses attorney's fees. For whatever reason, Mr. Canada chose to file a freestanding lawsuit and is now trying to shoehorn himself into 106B, which isn't, we believe, a good place to go. Okay, but what do you do about the fact that the cause of action was originally part of the bankruptcy estate but then was transferred to him under the reorganization? Yes, Your Honor. Am I misstating that? No, Your Honor. That was listed on the schedule. Where would that put him? Let's say he was within the 30 days. Where would that put him in terms of where he, so he's within the 30 days of having to advise him putting aside the conflict issue. What would you tell him? So I would tell him that he should file a request for attorney's fees with the bankruptcy court so he could avail himself of 106A1 and A3 to recover attorney's fees. There's a clear waiver of sovereign immunity there regardless of whether the claim is property of the estate or not. By going into district court and filing a freestanding suit and trying to avail himself of the waiver of sovereign immunity in 106B, the statute 106B, rather, refers to a claim that is property of the estate. Now, Mr. Canada could have confirmed a plan that said that the estate would retain the attorney's fees claim as estate property. He chose not to do that for whatever strategic or beneficial reasons. He thought it was better to have this revest in him as a reorganized debtor. That was a choice. He could have had the estate retain that claim. But as a waiver of sovereign immunity, the U.S. Commercial Fisheries has said that sovereign immunity is a prerequisite to subject matter jurisdiction. Therefore, we would submit that it's appropriate to determine whether the waiver of sovereign immunity applies. He argues it kind of once waived that we're done and then it kind of stays with the claim as we go through the world so that you don't, it doesn't kind of keep coming and going. It was waived. Now it's unwaived and so on. How do you respond to that? It's unwaived and so on.  that the waiver of sovereign immunity was evaluated at the time that the lawsuit is filed. And so at the time the lawsuit was filed, was there a waiver of sovereign immunity under 106B? And we would submit that the answer is no at that time. Well, he's saying yes because you waived it in the bankruptcy court and that it doesn't just suddenly disappear when the cause of action gets sent back to him. There isn't a suit that's been filed to say hypothetically if a suit were to be filed today, is there a waiver of sovereign immunity when in fact that suit wasn't filed until substantially later. But that's the time at which you have to evaluate the waiver of sovereign immunity. I guess you're saying it's a waiver of sovereign immunity as to the lawsuit. He's saying it's as to the claim and the claim that was, so he could bring the lawsuit in district court and assert something else and there wouldn't be a waiver of sovereign immunity. What's wrong with that argument? We think that ultimately it has to be decided at the time that the suit is filed. When you're looking at sovereign immunity, you're looking at the time that the claim is brought at the time that the suit is filed because it's subject matter jurisdiction which must exist at the time that the suit is filed irrespective of what may have happened in the past. Irrespective of whether he may have had a waiver of sovereign immunity in the past, instead of going under 106B. But that being said, that's the way we think is the best reading of the statute and the best way to strictly construe the waiver in favor of the government as Supreme Court precedent requires. I'm kind of in a circle, so keep going. Sure. Mr. Canada, your brother counsel referenced the Rutherford decision and we'd like to briefly address that. We think that Rutherford from this court has been raised legally since that case was decided. First, we would suggest that subsequent precedent from the Supreme Court in this court had made clear that there's not required to be congruence between the remedial scheme, the comprehensive remedial scheme and the remedies that are offered there under and the particular injury that's alleged by the plaintiff. That's what the Supreme Court said in Bush v. Lucas. It's what it said in Schweiker v. Chilokee where it was that a woman who was in the country illegally had been removed from the country after being coerced into waiving her due process rights and after telling the border and customs officials that she feared for her life because her boyfriend who was in a drug cartel had threatened her. When she was removed to Mexico, she was in fact killed by that boyfriend and her children brought a Bivens suit saying that they were entitled to damages for the loss of their mother. The Supreme Court's ruling against extending Bivens was the remedial scheme offered, the comprehensive remedial scheme governing removal and deportation proceedings. Notwithstanding that that particular remedial scheme did nothing to remediate the particular injury that was alleged by the plaintiff in that case. So we suggest in that regard Rutherford is certainly no longer good law. Secondly, Rutherford also appeared to be concerned that deliberate employee misconduct could be a basis for the death penalty. We would suggest that that is not good law in light of Hernandez. We certainly involve an allegation of intentional misconduct, the intentional shooting of an unarmed child and it has likewise been applied that way in other circuits in the tax context. For example, the Second Circuit and Hudson Valley Black Press dealt with allegations of racial animus in the assessment and collection process. What is your view of whether we should wait for the Hernandez decision? We don't think it's necessary. And Maria S. and this court saw the precedent without having to wait for a decision. Obviously we don't object to the court waiting to see how Hernandez comes out from the Supreme Court. But we think that it is a different case and that Ziegler versus Abbasi and other cases provide the appropriate framework regardless of how that case is decided. Other cases involving allegations of intentional misconduct in the tax context include Shriver from the Third Circuit which involved allegations of religious animus in the assessment process and then Judicial Watch from the Fourth Circuit involving allegations of viewpoint discrimination in the audit process. And then third and finally we would note that the remedial scheme that was at issue or that was available to taxpayers in Rutherford has been supplemented in at least five significant ways that provide additional protections for taxpayers. That at that time, for the relevant time period in Rutherford, taxpayers could not recover their attorney's fees which is something that the court pointed out that they could not receive attorney's fees in relation to tax litigation. Now they can. At the time there was no action for wrongful collection. Now there is. As discussed in Hudson Valley Black Press, at the time there was no statute that provided for the termination of employees who engaged in misconduct for the purpose of retaliation or harassment. Now there is. At the time there was not yet an IRS appeals office that was by law independent of the examination and collection functions. There were not available at that point in time collection due process procedures which again have been added to the code to supplement it and provide additional protections for taxpayers. Turning quickly to qualified immunity which we think is an alternative basis to affirm, we would note that the threshold issue that Mr. Canada is raising is whether the government employees were acting in a discretionary capacity. And the standard for discretionary function as articulated by this court in Cronin is whether a federal employee is performing non-ministerial acts within the bounds of his official capacity. Here, and in that case, what the employees were doing were they were adjudicating food stamp applications, determining whether and to what extent people were entitled to food stamp benefits. And in doing so, the court noted that they had to take statutes and regulations and apply them to concrete factual circumstances. That was considered to be a discretionary function even though it was bounded by regulations. We would submit that there is not a meaningful distinction between the discretionary functions in Cronin and the situation that we have here where IRS employees were interpreting statutes and regulations and applying them to concrete factual circumstances to determine whether and in what amount Mr. Canada was liable for a penalty. And then obviously we would submit that there was no clearly established law suggesting that this was a due process violation of the circumstances. And in fact, the Larson case from the Second Circuit held under what Mr. Canada admits in a similar case that there was no due process violation when a promoter penalty was assessed in an amount in excess of what the promoter was able to pay and seek review in a refund suit. We would submit that the same logic applies here. And although it's certainly true that Judge Hauser and Judge Boyle felt that the statute did not apply to Mr. Canada's particular situation because of how she construed the term investment in that statute, the Federal Circuit has since issued a ruling that held that a pre-money strategy can qualify as an investment and therefore a tax shelter for the relevant statute. So it certainly was not clearly established at the time and it was an issue of first impression and I'm sure is now a conflict. Okay. Thank you. Thank you, Your Honor. Mr. Lewis, you have time for rebuttal. I've got a lot I'd like to talk about but I'm going to try to do it as quickly as I can, Your Honor. First, with respect to Your Honor's comment that there could be these renegade IRS agents that did this intentionally because they didn't like Mr. Canada, that's not only true in this case but we intend to prove it at trial if we can get to trial. This case was brought only after discovery in the bankruptcy court proceeding where we learned why Mr. Canada was targeted. We learned what the IRS agents had done. We learned what their pattern was and we learned that they intentionally did this so that he couldn't go to court and challenge their action and they could benefit from it. With respect to any remedy provided by going to the appellate division of the Internal Revenue Service, again, it's alleged in the complaint that was dismissed. We have to accept it as true at this stage of the proceedings that the IRS agents told Mr. Canada's lawyers that you can go to appellate but that the appellate division has upheld these penalties 100% of the time and you really need to be settling with us instead of wasting your time. The other side in litigation always say you can go to court but we're going to win? Isn't that standard operating procedure? That may be true, Your Honor, but certainly in this case Mr. Canada's lawyers understood that that meant that you really didn't have an independent agency appellate division that was going to look at this and provide the relief or provide an adequate substitute for an independent judicial review. With respect to the comment that until the IRS assessed these penalties and filed their claim in the bankruptcy case, Mr. Canada had no ability in his bankruptcy case to contest or get a ruling, that's simply not true. Section 505 of the Bankruptcy Code is a section that says the bankruptcy court can take jurisdiction over tax matters in a bankruptcy case of this nature and Mr. Canada could have filed a motion under that section that would give the court jurisdiction to make a determination. It's sort of like a declaratory judgment action. If I was going to ask, why can't you file a declaratory judgment action? You cannot file a declaratory judgment action outside a bankruptcy court because, again, you're challenging the assessment of a penalty. That is non-reviewable by the courts, unfortunately. If we could, Your Honor, trust me, we would have done that and tried to get an injunction against collection in the meantime. So we could not. I'm moving all the way over to attorney's fees and issues about the plan and whether we lost our sovereign immunity waiver. We addressed that in the very last couple of pages of our reply brief. It's pages 29, pages 30, and there are arguments ignoring section 1123A.3.B, which provides that a Chapter 11 plan shall provide for the retention and enforcement by the debtor, that's Mr. Canada, by a trustee or by a representative of the estate appointed for such purpose of any claim or interest belonging to the debtor or to the estate. In other words, what that statute says is that when you come out of bankruptcy under a plan, your bankruptcy estate had these claims, had these rights, had this property. Your plan can say, give it to whomever, or you don't lose your sovereign immunity waiver because of that. Again, section... Pardon me? I'm sorry. Yes. I'm not saying that that changes the time limitations at all. Except to the extent as follows, and that is my next point. Section 1141A of the Bankruptcy Code, which is the section that says here's what happens when a plan is confirmed. Okay? And it makes the plan confirm, the confirmed plan binding on everybody in the case, including the IRS. And this plan, and unfortunately it's not in the record because I didn't know this issue was going to arise until they filed their brief, but we did, we have cited to where it's a public record in the Bankruptcy Code. This plan says, and I've got 11 seconds, real quick. This plan says you're keeping it, you're going to use all that money to pay your creditors. That's binding on the IRS regardless of what the law says under this court's decision, Shoff v. Republic Supply. Thank you very much, Your Honors. All right. Thank you to both sides. We appreciate your arguments, your cases under submission. And that concludes the arguments from today's cases. We will resume tomorrow morning at 8.45 a.m.